UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| JOHN PAUL MOORE | NO. 18-00018-BAJ-RLB |

**RULING AND ORDER**

On January 24, 2023, this matter came before the Court for a final evidentiary hearing regarding the Petition to revoke the terms of Defendant's supervised release, due to Defendant having been arrested and charged with domestic abuse battery. Throughout these proceedings, Defendant has maintained his innocence of the alleged conduct that resulted in his arrest. For reasons set forth below, and those stated on the record of the January 24 hearing, the Petition will be denied and these revocation proceedings will be dismissed.

### I.  RELEVANT BACKGROUND

On May 17, 2018, Defendant pleaded guilty to one count of unlawful possession of a firearm by a person subject to a domestic violence protective order, in violation of 18 U.S.C. § 922(g)(8). (Docs. 21, 22).

On October 3, 2018, the Court entered its judgment sentencing Defendant to a term of 21 months imprisonment, followed by three years of supervised release. (Doc. 31). The first mandatory condition of Defendant's supervised release states: "You must not commit another federal, state or local crime." (Doc. 31 at p. 3).

Defendant was released from the Bureau of Prisons on March 29, 2021. (Doc. 39). On July 27, 2022, the U.S. Probation Service initiated the instant revocation

1

proceedings, alleging that Defendant violated the terms of his supervised release by having been arrested and charged with domestic abuse battery. (*Id.*).

As alleged in the Petition, Defendant's arrest followed a heated argument with Complainant Brittany Fisher on October 7, 2021, which resulted in the Baton Rouge Police being dispatched to Complainant's apartment. When the police arrived, the responding officer, Terrance Smith, heard Defendant yelling and immediately separated Defendant and Complainant. Thereafter, Complainant informed Officer Smith that Defendant was upset with her because she created an Instagram post about her ex-boyfriend's clothing line. She further stated that the argument began when she was at work (by phone and text messaging), prompting her to tell a friend to call the police if she did not hear from her after she got home. Complainant reported that after work, the argument continued in-person at her apartment, where "it turned physical." (Doc. 39 at p. 2). Complainant told Officer Smith that Defendant "pushed her on the bed, grabbed her neck, and started screaming at her," "twisted [her] right ear and struck her in the left arm with a closed fist." (Doc. 39 at p. 2). Complainant further stated that she wanted to "press charges." (*Id.*). When taking Complainant's statement, Officer Smith observed a scratch on the right side of her neck, scratches around her right ear, and a bruise on her left elbow. (*Id.*).

Officer Smith also questioned Defendant about the argument. Defendant explained that it began because Complainant changed her name on Instagram without telling him. Defendant repeatedly insisted, however, that "he did not get physical." (Doc. 39 at p. 1). Defendant expressed surprise that he was being arrested

for battery, and attempted to explain that when Complainant gets angry she often injures herself, recently going so far as to punch her bathroom mirror.

On December 10, 2021, Defendant was charged in the Nineteenth Judicial District Court for the Parish of East Baton Rouge with domestic abuse battery, in violation of La. R.S. § 14:35.3. (Doc. 39 at p. 4).

In the ensuing weeks and months, Complainant recanted her statement to Officer Smith, informing multiple parties—including the U.S. Attorney's Office and the U.S. Probation Service—"that she was drinking on the night in question, that the injury to her elbow occurred at work, and that her other injuries (to her neck and ear) were 'old.'" (Doc. 57-2 at p. 1; *see also* Doc. 57-3). In sum, Complainant repudiated her statement to Officer Smith, asserting instead that Defendant "did not hit her, that they were only arguing." (Doc. 57-2 at p. 1).

On August 16, 2022, at Complainant's request, the State of Louisiana dismissed the battery charge against Defendant. (Doc. 57-1).

Still, despite Complainant's recantation, and dismissal of the underlying charge against Defendant, these revocation proceedings went on. On August 25, 2022, at Defendant's preliminary revocation hearing, the Magistrate Judge heard testimony from U.S. Probation Officer Alexis Bates and determined that probable cause existed to believe that Defendant committed the violation set forth in the Petition, but released Defendant on conditions pending his final revocation hearing. (Doc. 48 at pp. 2-3). Notably, at this hearing Defendant called Complainant as a witness, and attempted to question her regarding the events of October 7 and her

recantation. On the advice of counsel, Complainant repeatedly invoked her Fifth Amendment privilege against self-incrimination, refusing to answer any such questions. (Doc. 57-4 at pp. 50-57).

On January 24, 2023, this matter finally came before the Court for a final revocation hearing. The five-month delay was the result of multiple continuances to allow briefing aimed to address whether the Government could lawfully prove its case *without* Complainant's testimony—specifically, to determine whether the Government could introduce police body camera footage of Complainant's October 7 statement to Officer Smith without running afoul of the Confrontation Clause, particularly given Complainant's subsequent recantations and invocation of the Fifth Amendment. (*See* Docs. 62, 68, 69, 71). Ultimately, this issue was avoided when, on the Government's Motion, the Court entered its Order compelling Complainant to testify, in exchange for immunity from prosecution for any truthful testimony elicited as a result of the Court's Order. (*See* Docs. 70, 72).

The Government called three witnesses at the January 24 hearing: Officer Smith, Probation Officer Bates, and Complainant. Officer Smith's credible testimony closely tracked the allegations set forth in the Petition. He stated that upon arriving at Complainant's apartment he heard Defendant yelling, prompting him to separate Defendant from Complainant. Thereafter, he took Complainant's statement, and Defendant's statement. Significantly, however, Officer Smith conducted no investigation of Defendant's assertion that Complainant had recently punched the bathroom mirror, or Defendant's suggestion that Complainant's injuries may have

4

been the result of self-harm. Instead, Officer Smith arrested Defendant solely based on Complainant's prior statement that Defendant "got physical" with her.

Probation Officer Bates testified credibly that she received an unsolicited phone call from Complainant on October 19, 2021, approximately two weeks after Defendant's arrest. In this brief conversation, Complainant informed Officer Bates that Defendant was arrested, and that she (Complainant) was seeking to have the charge dropped. Complainant explained that the fight with Defendant followed a "disagreement," and that the scratch on her neck was inflicted by a patient at work, *not* Defendant. Officer Bates stated that she attempted to follow up with Complainant on multiple occasions, but never succeeded. Additionally, Officer Bates testified that, based on this conversation, it was her impression that Defendant did *not* commit the battery as alleged by Complainant on October 7.

Finally, Complainant took the stand. She confirmed the fact of the argument with Defendant on October 7, but otherwise adamantly disavowed her prior statement to Officer Smith, testifying that Defendant did not strike or batter her in any way, and that Defendant never made her fear for her safety. Plaintiff explained that her statement to her friend that she "should call the police" was an off-handed remark intended as a "joke," that she drank approximately eight ounces of brandy in the hour before the police arrived at her apartment, and that, in the moment, she told Officer Smith that Defendant battered her because she knew that he would be arrested. Complainant further stated that her injuries were all work-related, including the scratch on her neck, which resulted from an encounter with "a dementia

5

patient" that refused to be changed. Complainant admitted to breaking the bathroom mirror by punching it, and stated that "self-harm" soothes her in "tense or emotional" situations. Complainant testified that she has had no contact with Defendant since his arrest, regrets making a false statement to Officer Smith, and wants to "right the wrong" that occurred that night.

## II. LAW AND ANALYSIS

Title 18, United State Code § 3583 provides that "a sentencing court may impose a term of supervised release following the defendant's imprisonment as part of the sentence." *United States v. Shabazz*, 633 F.3d 342, 344 (5th Cir. 2011) (citing 18 U.S.C. § 3583(a)). "If a district court later finds by a preponderance of the evidence that a defendant has violated a condition of supervised release, that court may 'revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease [sic] supervision.'" *Id.* (quoting 18 U.S.C. § 3583(e)(3)).

The terms of Defendant's supervised release expressly prohibit him from committing another federal, state or local crime. Here, Defendant is alleged to have committed domestic battery against Complainant, a particularly troubling charge given Defendant's underlying conviction for unlawful possession of a firearm by a person subject to a domestic violence protective order. Further, the Court has no trouble concluding that *probable cause* existed to believe that Defendant committed a battery on Complainant—given the state of affairs when Officer Smith arrived at Complainant's apartment, Complainant's visible injuries, and Complainant's initial

6

statement—thus requiring a closer examination to determine whether Defendant's supervised release should be revoked.

But probable cause will not carry the day in the end. And here the Government falls short. The sole violation charged against Defendant is commission of domestic battery, in violation La. R.S. § 14:35.3. Domestic battery, however, requires proof of "the intentional use of force or violence" against the victim. La. R.S. § 14:35.3(A). Here, Complainant's *unrebutted* testimony establishes that Defendant did *not* touch her on October 7, 2021, that her injuries were from other sources, and that she made up a story to have Defendant arrested and removed from her apartment. As such, there is no basis to support a finding that Defendant violated his supervised release.

### III. CONCLUSION

Accordingly, for the reasons set forth herein, and those stated on the record of the January 24, 2023 hearing,

**IT IS ORDERED** that the Petition to revoke the terms of Defendant's supervised release be and is hereby **DENIED**, and that and these revocation proceedings be and are hereby **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 27th day of January, 2023

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA